UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| ROSIE S. GARCIA,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>            Defendant. | Case No. ED CV 14-531-AS<br><br>**MEMORANDUM OPINION** |

**PROCEEDINGS**

On March 25, 2014, Plaintiff filed a Complaint seeking review of the denial of her application for Supplemental Security Income. (Docket Entry No. 3). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 9-10). On August 12, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 12-13). On March 2, 2015, the parties filed a Joint Stipulation ("Joint Stip.") setting

forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 19).

The Court has taken this matter under submission without oral argument. <u>See</u> C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed April 1, 2014 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, formerly employed as a teacher aide, office helper and carpenter apprentice (<u>see</u> AR 31-32, 44-49, 76-77), asserts disability beginning January 1, 2010, based on the alleged physical impairments of diabetes, asthma, high blood pressure, arthritis, and gout. (<u>See</u> AR 164-71, 185). On September 27, 2012, Administrative Law Judge Jesse J. Pease ("ALJ"), examined the records and heard testimony from Plaintiff, who was represented by counsel and assisted by an interpreter, and vocational expert ("VE") David Rinehart (AR 38-83).

On December 10, 2012, the ALJ issued a decision denying Plaintiff's application. (<u>See</u> AR 24-34). The ALJ found that Plaintiff had the severe impairments of "pseudophakia in both eyes; status post repair of retinal detachment in the right eye; macular degeneration in the right eye; high blood pressure; asthma; gout; obesity; and diabetes mellitus" (AR 26), and that Plaintiff's arthritis was a nonsevere impairment. (AR 26-27). The ALJ determined that Plaintiff had the residual functional

capacity ("RFC")[1] to perform medium work[2] with the following restrictions: "she can stand and/or walk for about six hours out of an eight-hour workday; she can sit for about six hours out of an eight-hour workday; she can perform postural activities on a[] frequent basis, except she cannot climb ladders, ropes or scaffolds; she must avoid excessive exposure to fumes, odors, dusts, smoke, gases or poor ventilation, etc.; she must avoid hazardous machinery and unprotected heights; and she cannot perform work where monocular vision would be a safety issue or prevent the performance of the work." (AR 27).

Relying on the testimony of the VE, the ALJ found that Plaintiff was able to perform her past relevant work as a teacher aide II and as an office helper. (AR 31). Alternatively, the ALJ found that, in addition to her past relevant work, Plaintiff was also able to perform other jobs existing in significant numbers in the national economy based on the VE's testimony that "in the event office helper w[as] determined not to be past relevant work since it was only performed half the time while on the job (with the other half of the time spent on that job performing the tasks of teacher aide II), the unskilled occupation of office helper could be performed as other work" such as a office helper, mail clerk or library page. (AR 33). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Id.).

---

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 16). The request was denied on January 29, 2014. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**PLAINTIFF'S CONTENTION**

Plaintiff alleges that the ALJ erred in discounting the credibility of her subjective complaints in support of her disability claim. (See Joint Stip. at 4-18).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033,

1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[3] legal error.

---

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

**A.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect." Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the

severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

The ALJ set forth the following summary of Plaintiff's testimony at the hearing:

> The claimant alleged she was unable to work due to pain throughout her whole body from arthritis and gout flare ups that occurred half the days out of the month. She testified she could do chores for about an hour changing positions among sitting, standing, and walking but would then have to lay down to rest for an hour or two. She alleged she could hardly lift

>anything, she could sit for at most one hour at a time, and she could be on her feet at most for 30 minutes at a time. She asserted she would have to lay down and rest for more than half of an eight-hour workday. With respect to her vision, the claimant indicted she only saw white and spots in the right eye and the left eye was better. She acknowledged she could read notices from the Social Security Administration using over-the-counter glasses. She reported her asthma, hypertension, and diabetes were controlled with treatment.

(AR 28 (citations omitted)).

After examining the administrative record and the testimony presented at the hearing, the ALJ found that Plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms but Plaintiff's statements[4] concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent those statements were inconsistent with the RFC assessment. (AR 28).

---

[4] At the hearing, Plaintiff testified that she is unable to work due to pain in "pretty much [her] whole body," but more specifically in her lower back, neck and both hands. (See AR 50-51). She has pain because of her arthritis and gout flare ups. (See AR 51-52). Plaintiff also has breathing problems because of her asthma. (See AR 52). Although she has high blood pressure and diabetes, Plaintiff testified that they are controlled with treatment. (See AR 53, 56). Plaintiff can read with her left eye as long as she has her glasses on and if what she is reading is not too close to her face. (See AR 53-54). She also stated that she can sit in a chair for no more than an hour, stand for up to thirty minutes and do chores for up to one hour before needing to lay down. (See AR 69-71). Plaintiff also testified that she can "hardly lift anything that weighs anything." (See AR 73).

The ALJ discounted Plaintiff's credibility for the following reasons: (1) Plaintiff's treatment has been minimal and conservative in nature which is inconsistent with alleged functional limitations and suggests that the alleged symptoms and limitations are not as severe as alleged; and (2) the objective medical evidence does not support the extent of Plaintiff's symptoms. (AR 28-29).

As set forth below, the Court finds that the ALJ stated legally sufficient reasons for his adverse credibility finding.[5]

**1.  Plaintiff's Minimal And Conservative Treatment**

The ALJ relied on the fact that, apart from Plaintiff's cataract surgery, she had received only "routine, conservative treatment for her impairments" which the ALJ found to be inconsistent with Plaintiff's alleged functional limitations. (AR 29). "[T]he relatively benign positive clinical and diagnostic findings from consultative examinations detailed below, do not support more restrictive functional limitations

---

[5] The ALJ also "discounted the seriousness of [Plaintiff's] asthma to some extent give[n] her continuing 20-year history of smoking despite having asthma for 18 years." (AR 28). However, to the extent this finding was a basis for discounting Plaintiff's credibility, it was not a legally sufficient reason because the record does not indicate that Plaintiff was medically advised to quit smoking to alleviate symptoms of her asthma. See e.g., Bybee v. Astrue, No. 10-3264, 2011 WL 6703568, *8 (E.D. Cal. Dec. 21, 2011) ("Smoking despite medical advice to quit is relevant to the credibility analysis, as is evidence of successfully quitting smoking for significant periods") (citation omitted); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record). Nevertheless, the Court finds the ALJ's remaining reasons for rejecting Plaintiff's subjective testimony to be clear and convincing. See Carmickle v. Comm'r, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (The harmless error rule applies because "remaining reasoning and ultimate credibility determination[s] were adequately supported by substantial evidence in the record.").

that those assessed herein." Id.  This finding was supported by the record which reveals that, except for treatment notes related to Plaintiff's cataract surgery during the period May 2010 to May 2011 (see AR 240-65), Plaintiff saw her treating physician, Arthur E. Jimenez, only two times: on March 8 and March 27, 2012.[6]  (See AR 28; see also AR 233-34).  Significantly, on the first office visit, Plaintiff's "present complaints" were only a request for blood work, referral to a dermatologist and prescription refills, while her second visit was for the purpose of getting the results of the blood work.  (See AR 233-34). As the ALJ observed, these two office visits indicate that Plaintiff was being "prescribed medications for high blood pressure, asthma, gout, and diabetes" and although Plaintiff's blood sugar level was high, her blood pressure was not elevated at either visit.[7]  (See AR 28).  Thus, the ALJ properly relied on Plaintiff's minimal, conservative and routine treatment to partially discredit her testimony about her functional limitations.  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing credibility, ALJ properly considered doctor's failure to prescribe, and claimant's failure to request, any serious medical treatment for supposedly excruciating pain); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (ALJ's reliance on medical evidence, lack of

---

[6] The record also reveals that as of August 24, 2011, Plaintiff's other reported treating physician, Carlos Montes, M.D. (see AR 196), twice confirmed that Plaintiff was not his patient. (See AR 210, 231-232).

[7] Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); see also Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("claimant carries the initial burden of proving a disability"); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving that she is disabled.").

treatment, and use of nonprescription pain medication for "abnormalities" were "clear and convincing reasons for partially rejecting [claimant's] pain testimony"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the minimal conservative treatment obtained).

Thus, the ALJ's reliance on Plaintiff's minimal and conservative treatment was a clear and convincing reason to discount Plaintiff's credibility.

### 2. Objective Medical Evidence

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

Here, after reviewing the medical record, the ALJ found that the objective medical evidence did not fully support Plaintiff's complaints

of total disability. (A.R. 28-31). The Court's review of the record supports this finding.

An internal medicine consultative examination by Dr. Concepcion A. Enriquez on March 18, 2011, revealed that Plaintiff's physical and neurological examinations were generally within normal limits. (See AR 212-14). Dr. Enriquez noted that while Plaintiff's blood sugar was not well controlled, her blood pressure was controlled and there were "no signs of congestive heart failure or stroke." (AR 214). He also found that Plaintiff had undergone surgery in her left eye for cataracts and was awaiting surgery in her right eye. (Id.). Although Plaintiff had a history of asthma, her "lungs were clear to auscultation with no crackles or rhonchi noted" and "no chest retraction." (Id.). Although Plaintiff had a history of gout, there was "no tophaceous growths noted on any joints . . . [and] no deformities or signs of inflammation." (Id.). Plaintiff was also able to do "fine and gross manipulation using the fingers of both hands." (Id.) Based on his examination, Dr. Enriquez determined that Plaintiff could occasionally lift and/or carry 100 pounds and frequently lift and/or carry 50 pounds; stand and/or walk with normal breaks for six hours in an 8-hour workday; sit with normal breaks for six hours in an 8-hour workday; and should avoid work with exposure to extreme temperatures, dust, chemicals, and fumes. (Id.).

The ALJ did not give "significant weight" to Dr. Enriquez's less restrictive assessment of Plaintiff's physical limitations because it was based on a "one-time examination' and did not "adequately consider the combined effects of [Plaintiff's] impairments." (AR 31).

An ophthalmological/optometric consultative examination by Dr. Juancho Remulla on April 30, 2011, diagnosed Plaintiff with pseudophakia in both eyes, status post repair of retinal detachment in the right eye, and macular degeneration in the right eye. (See AR 218-20). Significantly, Dr. Remulla opined that no significant visual field deficit was expected. (Id.)

An internal medicine consultative examination by Dr. Seung Ha Lim on October 30, 2012, revealed that Plaintiff's physical and neurological examinations were generally within normal limits. (See AR 268-71). Dr. Lim noted that although Plaintiff complained of symptoms of poorly controlled diabetes, she did not present any signs of diabetic neuropathy. (See AR 271). Plaintiff complained of a history of asthma, but denied "any emergency room visits or hospitalizations due to asthma exacerbations in the last twelve months" and Plaintiff presented with "clear lung fields without any wheeze, rales or ronchii on auscultation." (Id.). Although Plaintiff complained of a history of generalized joint pain, the examination revealed a normal range of motion of the upper and lower extremities and she did not require the use of assistance devices for ambulation despite her slow gait while complaining of joint pain. (Id.). Dr. Lim concluded that Plaintiff could stand and/or walk six hours in an 8-hour workday with appropriate breaks; sit six hours in an 8-hour workday with appropriate breaks; lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; and could not frequently use her upper and lower extremities or climb, crouch, crawl and kneel. (Id.).

The ALJ gave significant weight to the functional assessment given by Dr. Lim, finding that it was well supported by the objective medical evidence and "consistent with the record as a whole including the conservative treatment, apart from the cataract surgery, and the relatively benign findings from the two internal medicine consultative examinations." (AR 30).

Finally, the ALJ gave little weight to the opinion of Plaintiff's treating physician, Dr. Jimenez, that Plaintiff's polyarthritis precluded her from, *inter alia*, sitting, standing or walking more than two hours during an eight-hour work day and that she could only rarely lift and carry up to 10 pounds and only rarely use her hands for handling, pushing and pulling, and fine manipulation. See AR 266-67. The ALJ properly reasoned that Dr. Jimenez' opinion was conclusory and not supported by objective medical evidence, noting that Dr. Jimenez did not cite to any objective clinical or diagnostic findings to support his opinion and that his own treatment notes failed to indicate that Plaintiff was suffering from functionally limiting polyarthritis. (AR 30-31). See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (The ALJ properly discounted treating physician's opinion for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record what the basis for these restrictions might be"); see also Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (The ALJ's decision to reject the treating physician's opinion, in part,

since it was inconsistent with the treating physician's own treatment notes was a specific and legitimate reason supported by substantial evidence).

Thus, the Court finds that substantial evidence supports the ALJ's credibility analysis with respect to his assessment that the objective medical evidence did not support Plaintiff's allegations regarding the intensity, persistence and limiting effects of her symptoms. Accordingly, this was a clear and convincing reason for discounting Plaintiff's credibility.[8] The Court therefore defers to the ALJ's credibility determination. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.").

///
///
///

---

[8] As discussed above, the objective medical evidence was not the sole legally sufficient reason for discounting Plaintiff's credibility. See Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006)(ALJ may cite the medical record in concert with other factors in assessing a claimant's credibility).

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 12, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE